Gregory L. Curtner (GC 5395)
Susan I. Robbins (SR 5759)
MILLER, CANFIELD, PADDOCK AND STONE, P.L.L.C.
500 Fifth Avenue, Suite 1815
New York, NY 10110
Telephone: (212) 704-4400

Attorneys for  Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HIGHLAND PARK CDO I GRANTOR TRUST, SERIES A, | |
| | Civil Action No. 08 CV 5723 |
| Plaintiff/Counter-Defendant, | |
| v. | Hon. Naomi Reice Buchwald |
| WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE MORGAN STANLEY CAPITAL I INC. COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-XLF | |
| Defendant/Counter-Claimant | |

## DEFENDANT'S ANSWER TO THE COMPLAINT, NOTICE OF AFFIRMATIVE AND OTHER DEFENSES, AND COUNTERCLAIM

Defendant, Wells Fargo Bank, N.A., as Trustee for the Morgan Stanley Capital I Inc.

Commercial Mortgage Pass-Through Certificates Series 2006-XLF (hereinafter "Wells Fargo"),

by and through its attorneys, Miller, Canfield, Paddock and Stone, P.L.C., answers the

allegations of Plaintiff's Complaint as follows:

**ALLEGATION NO. 1:**      This declaratory judgment action involves a dispute between Highland and Wells Fargo over Highland's ability to sue and collect against guarantors of now defaulted debt. Highland and Wells Fargo are competing lenders seeking to collect on separate defaulted debt. Wells Fargo is owed $24.5 million from a subsidiary that owns a property interest in a former Holiday Inn hotel in Columbus, Ohio. Highland is owed $10.5 million from the

parent company of Wells Fargo's borrower (Highland's borrower has no direct interest in the hotel property).

**ANSWER NO. 1**:    Wells Fargo admits only that Highland contends there is a dispute over the

Intercreditor Agreement which subordinates Highland's Mezzanine Loan to Wells Fargo's

Senior Loan.  The amounts owed to Wells Fargo (and Highland after the Senior Loan is paid in

full) may be increased by interest, attorneys' fees and costs provided for in the respective loan

agreements.

**ALLEGATION NO. 2:**    Although both Highland's and Wells Fargo's loans were made to separate companies for different amounts on different dates and are governed by different loan agreements, both loans are guaranteed personally by the same four individuals, albeit in separate guaranty agreements. Highland and Wells Fargo now find themselves in a race to successfully enforce their respective guaranties against these same individuals who presumably have limited assets. Highland initiated a breach of contract action in this Court to enforce the guaranties and Wells Fargo initiated a foreclosure action (on the hotel property) in Ohio state court to which Wells Fargo recently added a claim for breach against the guarantors.

**ANSWER NO. 2**:    Wells Fargo generally admits the factual allegations of Allegation No. 3

but denies that Wells Fargo is in a "race" to successfully enforce their respective guaranties

because the subordination provisions of the Intercreditor Agreement prohibit Highland from

taking any action on its guaranty until the Senior Loan is paid in full.  Therefore, Highland

should cease and desist from its action against the Guarantors until the Senior Loan is paid in

full.

**ALLEGATION NO. 3:**    Wells Fargo now seeks to intervene in and dismiss Highland's New York enforcement action on the ground that an intercreditor agreement between Highland and Wells Fargo bars Highland's claim. Wells Fargo contends that until its $24.5 million loan balance is paid in full, Highland is precluded from enforcing its $10.5 million loan against the guarantors. By contrast, Highland believes that there are no such barriers in any of the operative agreements, including the intercreditor agreement. Wells Fargo's exploitation of the intercreditor agreement runs afoul of well settled New York law (the intercreditor agreement calls for New York law). From Highland's perspective, Wells Fargo is simply trying to gain an unfair advantage in the race for funds by delaying, through motion practice, Highland's effort to collect against the guarantors.

**ANSWER NO. 3**:     Wells Fargo admits that it has sought to intervene in and dismiss Highland's New York enforcement action on the ground that the Intercreditor Agreement between Highland and Wells Fargo bars Highland's claim. According to the Intercreditor Agreement, until Wells Fargo's $24.5 million loan balance is paid in full, Highland is precluded from enforcing its $10.5 million loan against the guarantors.  As to the remaining allegations, Wells Fargo is without information or knowledge sufficient to form a belief as to what Highland may believe or what Highland's perspective is, except to deny that such beliefs or perspectives form the basis of any legal defense or remedy against Wells Fargo.  Wells Fargo denies that it is "trying to gain an unfair advantage in the race for funds" but is  merely seeking to enforce the terms of the Intercreditor Agreement which has been breached by Highland.

**ALLEGATION NO. 4:**     This declaratory judgment action is intended to resolve Highland's dispute with Wells Fargo. Specifically, Highland seeks a declaration that it has the right to bring suit under the operative agreements regardless of the repayment status of Wells Fargo's loan.

**ANSWER NO. 4**:     Wells Fargo denies that Highland has the right to bring suit under the operative agreements until Wells Fargo's loan is repaid in full.

**PARTIES**

**ALLEGATION NO. 5:**     Plaintiff Highland, a successor-in-interest to Morgan Stanley, is a Cayman Islands trust, having an address at The Bank of New York Trust Company, National Association, 601 Travis Street, 16th Floor, Houston, Texas.

**ANSWER NO. 5**:     Wells Fargo is without information or knowledge sufficient to form a belief as to the truth of the allegations in Allegation No. 5.

**ALLEGATION NO. 6:**     Upon information and belief, Defendant Wells Fargo is a national banking association acting as trustee for the Morgan Stanley Capital I Inc. Commercial Mortgage Pass-Through Certificates Series 2006-XLF, and having a place of business at c/o Midland Loan Services, Inc., 10851 Mastin, Suite 300, Overland Park, Kansas.

3

**ANSWER NO. 6**:    Wells Fargo admits the allegations of Allegation No. 6.

## JURISDICTION AND VENUE

**ALLEGATION NO. 7:**    The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, 2201, 2202, because this is a civil action between a citizen of a state and foreign state, the amount in controversy exceeds $75,000, exclusive of interest and costs, and this action is based upon an actual controversy between Highland and Wells Fargo regarding the interpretation of certain agreements.

**ANSWER NO. 7**:    Wells Fargo is without information or knowledge sufficient to form a

belief as to the truth of the allegations in Allegation No. 7.

**ALLEGATION NO. 8:**    Venue is proper in this District pursuant to 28 U.S.C. § 1391. Upon information and belief, a substantial part of the events giving rise to the claim occurred in this District. Under the Senior Loan (as defined below), Wells Fargo submitted to personal jurisdiction in the State of New York. Furthermore, the intercreditor agreement at issue is governed by the laws of New York and states that all matters of performance are interpreted to be wholly performed within the State of New York.

**ANSWER NO. 8**:    Wells Fargo is without information or knowledge sufficient to form a

belief as to the truth of the allegations in Allegation No. 8.

## THE RELEVANT AGREEMENTS

**ALLEGATION NO. 9:**    On July 18, 2006, Morgan Stanley, together with its successors and assigns, (in this capacity, the "**Senior Lender**") and Platinum Lodging, LLC ("**Senior Borrower**" executed a Loan Agreement for a loan in the original principal amount of $28,500,000 ("**Senior Loan**"). Morgan Stanley subsequently assigned to Wells Fargo its interests arising under the Senior Loan and the related senior loan documents.

**ANSWER NO. 9**:    Wells Fargo admits the allegations of Allegation No. 9.

**ALLEGATION NO. 10:**    On July 18, 2006, Matthew Studer, Fred Graft, Ernie Malas and Peter Coratola (the "**Guarantors**") executed a Guaranty of Payment and Guaranty of Recourse Obligations of Borrower (the "**Senior Guaranty**") and each thereby agreed to personally guaranty the Senior Loan. The Senior Guaranty is in favor of Wells Fargo (as assignee). Highland is not a party to the Senior Guaranty and has no interest in the Senior Guaranty.

**ANSWER NO. 10**:    Wells Fargo admits the allegations of Allegation No. 10.

**ALLEGATION NO. 11:**    On August 3, 2006, Morgan Stanley, together with its successors and assigns, (in this capacity, the "**Mezzanine Lender**" and Platinum Lodging Mezz, LLC ( "**Mezzanine Borrower**" executed a Mezzanine Loan Agreement for a loan in the original principal amount of $10,500,000 ("**Mezzanine Loan**"). Morgan Stanley subsequently assigned to Highland its interests arising under the Mezzanine Loan and the related mezzanine loan documents. The Mezzanine Borrower owns 99.5 percent of the Senior Borrower.

**ANSWER NO. 11**:    Wells Fargo admits the allegations of Allegation No. 11.

**ALLEGATION NO. 12:**    On August 3, 2006, the Guarantors executed a Mezzanine Guaranty of Payment and Guaranty of Recourse Obligations of Borrower ("**Mezzanine Guaranty**") and each thereby agreed to personally guaranty the Mezzanine Loan. The Mezzanine Guaranty is in favor of Highland (as assignee). Wells Fargo is not a party to the Mezzanine Guaranty and has no interest in the Mezzanine Guaranty.

**ANSWER NO. 12**:    Wells Fargo admits the allegations of Allegation No.12 except that Wells Fargo denies that it has "no interest" in the Mezzanine Guaranty since the term interest is undefined in the allegation and, depending on how interest is defined, Wells Fargo would have an interest in the Mezzanine Guaranty.  Specifically, the Intercreditor Agreement provides in Section 9(a), "All payments or distributions upon or with respect to the Mezzanine Loan which are received by Mezzanine Lender contrary to the provisions of this Agreement shall be received and held in trust for the benefit of Senior Lender and shall be paid over to Senior Lender in the same for as so received….."

**ALLEGATION NO. 13:**    Pursuant to the Mezzanine Guaranty, the Mezzanine Lender could "proceed directly and at once, without notice, against Guarantor to collect and recover the full amount of the liability hereunder or any portion thereof, without proceeding against Borrower or any other person…"

**ANSWER NO. 13**:    Wells Fargo denies that Highland has the right to bring suit under the operative agreements until Wells Fargo's loan is repaid in full.

**ALLEGATION NO. 14:**     Contemporaneous with the execution of the Mezzanine Guaranty, Senior Lender and Mezzanine Lender executed an Intercreditor Agreement dated August 3, 2006 (the "**Intercreditor Agreement**").

**ANSWER NO. 14**:     Wells Fargo admits that the Senior Lender and Mezzanine Lender executed an Intercreditor Agreement dated August 3, 2006, but is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Allegation No. 14.

**ALLEGATION NO. 15:**     The Intercreditor Agreement specifies certain rights as between Wells Fargo and Highland with respect to the Senior Loan and the Mezzanine Loan. Only Highland and Wells Fargo, as assignees, are parties to and have rights under the Intercreditor Agreement (e.g., the Agreement expressly precludes third party beneficiaries).

**ANSWER NO. 15**:     Wells Fargo admits that the Intercreditor Agreement specifies certain rights and that in this regard the Intercreditor Agreement, *inter alia,* prohibits Highland from bringing suit under the operative agreements until Wells Fargo's loan is repaid in full.

**ALLEGATION NO. 16:**     As is the case with intercreditor agreements generally, the Intercreditor Agreement sets forth in detail the priority that the Senior Lender has over the Mezzanine Lender with respect to (i) the Premises and other collateral at issue, and (ii) payments from the Senior Borrower. The central tenet of the Intercreditor Agreement is to give the Senior Lender priority over the collateral (e.g.,  the Premises). The Mezzanine Lender had to give a representation and warranty that "the Premises do not secure any loan from Mezzanine Lender to Mezzanine Borrower or any other Affiliate of Borrower." The Intercreditor Agreement also places conditions on the Mezzanine Lender's ability to bring an enforcement action against the Mezzanine Borrower (indeed, the Agreement defines this as an "Equity Collateral Enforcement Action"). The Intercreditor Agreement does not expressly prohibit or otherwise restrict Highland's right to enforce the Mezzanine Guaranty.

**ANSWER NO. 16**:     Wells Fargo is without information or knowledge sufficient to form a belief as to what "is the case with intercreditor agreements generally."  As to the remaining allegations of Allegation No. 16 and the specific Intercreditor Agreement in this case, Wells Fargo denies that Highland has the right to enforce the Mezzanine Guaranty in any way

inconsistent with the Intercreditor Agreement which subordinates Highland's rights and remedies to those of Wells Fargo.  Highland has no right to pursue its action on the Mezzanine Guaranty until the Senior Loan has been paid in full.

## DEFAULT PROCEEDINGS

**ALLEGATION NO. 17:**     The Mezzanine Loan matured on February 9, 2008 and the Mezzanine Borrower defaulted. Neither the Mezzanine Borrower nor any of the Guarantors have responded to Highland's demands for cure.

**ANSWER NO. 17**:   Wells Fargo is without information or knowledge sufficient to form a belief as to the truth of the allegations of Allegation No. 17.

**ALLEGATION NO. 18:**     Having received no response thereto, Highland exercised its right under the Mezzanine Guaranty and initiated an action in this Court on February 12, 2008 against the Guarantors (Case No. 08 Civ 01670) (the "**Guaranty Enforcement Action**") The Mezzanine Guaranty designated this Court with jurisdiction.

**ANSWER NO. 18**:   Wells Fargo is without information or knowledge sufficient to form a belief as to the truth of the allegations of Allegation No. 18 except that Wells Fargo admits that the Guaranty Enforcement Action was filed in this Court, but denies that Highland has rights to initiate actions that are inconsistent with the Intercreditor Agreement which subordinates Highland's rights and remedies to those of Wells Fargo.  Highland has no right to pursue its action on the Mezzanine Guaranty until the Senior Loan has been paid in full.

**ALLEGATION NO. 19:**     The Senior Loan matured on February 9, 2008. Upon information and belief, the Senior Borrower defaulted on the Senior Loan.

**ANSWER NO. 19**:   Wells Fargo admits the allegations of Allegation No. 19.

**ALLEGATION NO. 20:**     On March 11, 2008, Wells Fargo filed a foreclosure action (the "**Foreclosure Action**" against the Senior Borrower and other defendants in the Court of Common Pleas, Franklin County, Ohio. Wells Fargo subsequently amended its Ohio complaint to add a breach of contract claim against the Guarantors to enforce the Senior Guaranty.

**ANSWER NO. 20**:    Wells Fargo admits the allegations of Allegation No. 20.

**ALLEGATION NO. 21:**    On March 25, 2008, Wells Fargo filed a Notice of Claim of Interest (the "**Notice of Claim**") in the Guaranty Enforcement Action. In the Notice of Claim, Wells Fargo contends that it is a secured creditor of Highland and that it has a lien upon any collections by Highland pursuant to the terms of the Intercreditor Agreement.

**ANSWER NO. 21**:    Wells Fargo admits the allegations of Allegation No. 21.

**ALLEGATION NO. 22:**    On June 10, 2008, Wells Fargo moved to intervene and dismiss the Guaranty Enforcement Action ( "**Motion to Dismiss**").

**ANSWER NO. 22**:    Wells Fargo admits the allegations of Allegation No. 22.

## CONTRACT DISPUTE

**ALLEGATION NO. 23:**    As stated above, the Mezzanine Guaranty grants Highland the right to "proceed directly and at once, without notice, against Guarantor to collect and recover the full amount of the liability hereunder or any portion thereof, without proceeding against Borrower."

**ANSWER NO. 23**:    Wells Fargo denies that Highland has the right to initiate actions that are inconsistent with the Intercreditor Agreement which subordinates Highland's rights and remedies to those of Wells Fargo.  Highland has no right to pursue its action on the Mezzanine Guaranty until the Senior Loan has been paid in full.

**ALLEGATION NO. 24:**    Notwithstanding the plain language of the Mezzanine Guaranty, Wells Fargo contends that until the Senior Loan is paid in full, Highland is precluded from enforcing the Mezzanine Guaranty against the Guarantors.  In its Motion to Dismiss, Wells Fargo argues that the Intercreditor Agreement bars the Guaranty Enforcement Action and, as a result, should be dismissed.

**ANSWER NO. 24**:    Wells Fargo denies that Highland has the right to initiate actions that are inconsistent with the Intercreditor Agreement which subordinates Highland's rights and remedies

to those of Wells Fargo. Wells Fargo admits only that until the Senior Loan is paid in full, Highland is precluded from enforcing the Mezzanine Guaranty against the Guarantors and that Highland's Guaranty Enforcement Action, as a result, should be dismissed.

**ALLEGATION NO. 25:**    In its Notice of Claim, Wells Fargo cites to the following language within Section 9(a) of the Intercreditor Agreement in support of its claim:

> If a **Proceeding** shall have occurred or a Continuing Senior Loan Event of Default shall have occurred and be continuing, Senior Lender shall be entitled to receive payment and performance in full of all amounts due or to become due to Senior Lender before Mezzanine Lender is entitled to receive any payment on account of the Mezzanine Loan.

Exhibit 4 at 3 (emphasis added). That language, however, relates only to a "Proceeding," which is defined in the Agreement as bankruptcy proceedings against the Senior Borrower. The Guaranty Enforcement Action has absolutely nothing to do with bankruptcy or the Senior Borrower.

**ANSWER NO. 25**:    Wells Fargo denies that Section 9(a) relates only to a "Proceeding." Section 9(a) relates to a "Continuing Senior Loan Event of Default" as well and denies the remaining allegations of Allegation No. 25 as untrue.  By way of further answer, the parties have stipulated that, "The Senior Loan matured on February 9, 2008.  Upon information and belief, the Senior Borrower defaulted on the Senior Loan."  See Paragraph 19, above, which was admitted by Wells Fargo.  It is undisputed that this default is a "Continuing Senior Loan Event of Default" as defined in the Intercreditor Agreement.

**ALLEGATION NO. 26:**    In its subsequently filed Motion to dismiss, Wells Fargo quickly disposed of that interpretation and shifted to another portion of Section 9(a):

> Except (i) as otherwise provided in this Agreement and (ii) in connection of the exercise by Mezzanine Lender of its rights and remedies with respect to the Separate Collateral in accordance with the terms of this Agreement, all of Mezzanine Lender's rights to payment of the Mezzanine Loan and the obligations evidenced by the Mezzanine Loan Documents are ***hereby subordinated*** to all of Senior Lender's rights to payment by ***[Senior] Borrower*** of the Senior Loan and

the obligations secured by the Senior Loan Documents, and Mezzanine Lender shall not accept or receive payments (including, without limitation, whether in cash or other property and whether received directly, indirectly or by set-off, counterclaim or otherwise) *from [Senior] Borrower* and/or from the Premises prior to the date that all obligations of [ Borrower to Senior Lender under the Senior Loan Documents are paid.

Exhibit 4 at 17 (emphasis added).

**ANSWER NO. 26**:   Wells Fargo denies that it quickly disposed of anything.   Further, the

submissions of Wells Fargo speak for themselves.

**ALLEGATION NO. 27:**     Wells Fargo's reliance on Section 9(a) is misplaced. The scope of subordination in Section 9(a) is limited to payments made by the <u>Senior Borrower</u>.  Section 9(a) does not address, let alone preclude, payments to Highland from the Guarantors.

**ANSWER NO. 27**:   Wells Fargo denies that its reliance on Section 9(a) is misplaced and

denies Highland's (mis)interpretation of Section 9(a) for the reasons more fully set forth in Wells

Fargo's briefs filed in connection with its Motion to Dismiss.

**ALLEGATION NO. 28:**     What Section 9(a) does do is specify what is being subordinated (payment from Senior Borrower) and the duration of the subordination (until the Senior Loan is paid). The same cannot be said for the other Section that Wells Fargo relies on in its Motion to Dismiss. That Section, 8(a), states:

> Mezzanine Lender hereby **subordinates** and makes junior the Mezzanine Loan, the Mezzanine Loan Documents and the liens and securities created thereby, and all rights, remedies, terms and covenants contained therein to (i) the Senior Loan, (ii) the liens and security interests created by the Senior Loan Documents and (iii) all of the terms, covenants, conditions, rights and remedies contained in the Senior Loan Documents, and no amendments or modifications to the Senior Loan Documents or waivers of any provisions thereof shall affect the subordination thereof as set forth in this Section 8(a). Mezzanine Lender hereby acknowledges and agrees that **the Mezzanine Loan is not secured by a lien on the Premises** or any of the other collateral securing the Senior Loan or any other assets of the Borrower.

Exhibit 4 at 17 (emphasis added).

**ANSWER NO. 28**:    Wells Fargo admits only that in Section 8(a) the Mezzanine Lender subordinates and makes junior the Mezzanine Loan, the Mezzanine Loan Documents and the liens and securities created thereby, and all rights, remedies, terms and covenants contained therein to (i) the Senior Loan, (ii) the liens and security interests created by the Senior Loan Documents and (iii) all of the terms, covenants, conditions, rights and remedies contained in the Senior Loan Documents, and no amendments or modifications to the Senior Loan Documents or waivers of any provisions thereof shall affect the subordination thereof as set forth in this Section 8(a).  The Intercreditor Agreement provision specifically provides that *all rights and remedies* of Highland under the Mezzanine Loan Documents, including the Mezzanine Guaranty,  are subordinate to *all rights and remedies* of the Senior Lender.  Highland violated this provision of the Intercreditor Agreement when it exercised a remedy under the Mezzanine Loan Documents, i.e. filed an action on the Mezzanine Guaranty,  before the Senior Loan was paid in full.

**ALLEGATION NO. 29:**    Wells Fargo construes the term "subordinates" in this Section to prohibit enforcement of the Mezzanine Guaranty against the Guarantors and, separately, the Mezzanine Lender's ability to collect any payments under the Mezzanine Guaranty from the Guarantors until the Senior Loan is paid in full. This interpretation is materially flawed.

**ANSWER NO. 29**:    Wells Fargo denies that its interpretation is materially flawed and admits that under the Intercreditor Agreement the Mezzanine Lender is prohibited from enforcing the Mezzanine Guaranty and collecting any payments until the Senior Loan is paid in full.

**ALLEGATION NO. 30:**    According to Black's Law Dictionary, subordinate simply means "the act or process by which a person's rights are ranked below the rights of others." Ranking below one's rights does not equate to a bar or outright prohibition of enforcing contractual rights, particularly rights not against the borrower or collateral but against the Guarantors. Courts look to the operative contract to specify which rights are subordinated and how they are subordinated. And New York law construes subordination agreements narrowly.

**ANSWER NO. 30**: Wells Fargo admits that Black's Law Dictionary defines "subordination" as "the act or process by which a person's rights are ranked below the rights of others."  Hence, a

subordination of remedy is simply an agreement placing one entity's right to pursue remedies below the rights of another entity to pursue remedies.  In the instant case, the Mezzanine Lender unambiguously agreed, among other subordinations to "subordinate[] and make[] junior" its rights and remedies to Wells Fargo's rights and  remedies under the Senior Loan.

**ALLEGATION NO. 31:**     Here, Section 8(a) does not specify what it means for the Mezzanine Loan to be subordinated to the Senior Loan other than in reference to liens on the Premises, which are not in dispute. Section 8(a) does not address restrictions to enforcing the Mezzanine Guaranty, conditions or duration of any purported restrictions, or when Highland could proceed against the Guarantors. To have imposed such burdens would have required the kind of detail evidenced in other provisions of the Intercreditor Agreement (e.g., Section 9(a)'s restriction on receiving payments from the Senior Borrower) but not found in Section 8(a). This is particularly true where the Mezzanine Guaranty, executed contemporaneously with the Intercreditor Agreement, expressly permits Highland to proceed against the Guarantors without any prohibition. Wells Fargo's interpretation of the Intercreditor Agreement would render null and void the express grant of the Mezzanine Guaranty, something New York law dictates cannot be done unless unambiguously set forth in writing.

**ANSWER NO. 31**:  Wells Fargo admits only that under the Intercreditor Agreement the Mezzanine Lender is prohibited from enforcing the Mezzanine Guaranty and collecting any payments until the Senior Loan is paid in full.  The remaining allegations of Allegation No. 31 are not statements of fact, but legal argument that Wells Fargo denies as untrue.

## CAUSE OF ACTION
### (Declaratory Judgment)

**ALLEGATION NO. 32:**     Highland incorporates by reference all of the allegations contained in paragraphs 1 through 31, inclusive, of this Complaint.

**ANSWER NO. 32**:  Wells Fargo incorporates all of its Answers No. 1 through 31 as though fully set forth herein.

**ALLEGATION NO. 33:**     Highland has satisfied any and all of its conditions, covenants and obligations incumbent on it pursuant to the Mezzanine Guaranty, the Mezzanine Loan and the Intercreditor Agreement.

**ANSWER NO. 33**:    Wells Fargo denies the allegation of Allegation No. 33 because Highland

has acted in contravention of the Intercreditor Agreement.

**ALLEGATION NO. 34:**    Highland initiated the Guaranty Enforcement Action in accordance with the Mezzanine Guaranty and the Intercreditor Agreement.

**ANSWER NO. 34**:    Wells Fargo denies the allegation of Allegation No. 34 because Highland

has acted in contravention of the Intercreditor Agreement.

**ALLEGATION NO. 35:**    Through its Notice of Claim and Motion to Dismiss Wells Fargo has taken the position that Sections 8(a) and 9(a) of the Intercreditor Agreement bar the Guaranty Enforcement Action.

**ANSWER NO. 35**:    Wells Fargo admits that Sections 8(a) and 9(a) of the Intercreditor

Agreement bar the Guaranty Enforcement Action.

**ALLEGATION NO. 36:**    An actual controversy, as contemplated by 28 U.S.C. § 2201, has arisen and now exists between Plaintiff on the one hand and Defendant on the other concerning Plaintiffs ability to proceed with and collect in the Guaranty Enforcement Action.

**ANSWER NO. 36**:    Wells Fargo admits only that Highland has no rights or remedies under the

Guaranty Enforcement Action until the Senior Loan has been paid in full because such action is

barred by the terms of the Intercreditor Agreement.

**ALLEGATION NO. 37:**    Plaintiff desires a judicial determination that Plaintiff has the right to bring the Guaranty Enforcement Action under the Mezzanine Guaranty and Intercreditor Agreement.

**ANSWER NO. 37**:    Wells Fargo denies that Highland has the right to such a judicial

determination because Highland has no rights or remedies under the Guaranty Enforcement

Action until the Senior Loan has been paid in full because such action is barred by the terms of

the Intercreditor Agreement.

**ALLEGATION NO. 38:**    Plaintiff further requests a judicial declaration that Plaintiff has the right to retain any and all proceeds from the Guaranty Enforcement Action.

**ANSWER NO. 38**:    Wells Fargo denies that Highland has the right to such a judicial determination because Highland has no rights or remedies under the Guaranty Enforcement Action until the Senior Loan has been paid in full because such action is barred by the terms of the Intercreditor Agreement, and further has no right to retain and proceeds from the Guaranty Enforcement Action until the Senior Loan is paid in full.

**ALLEGATION NO. 39:**    A judicial declaration is necessary and appropriate at this time under the circumstances.

**ANSWER NO. 39**:    Wells Fargo admits the allegations of Allegation No. 39.

**WHEREFORE**, Defendant prays as follows:

1.    For a declaration that Plaintiff is barred by the Intercreditor Agreement from enforcing the Mezzanine Guaranty through, among other things, the Guaranty Enforcement Action.

2.    For a declaration that Defendant is entitled to any and all proceeds from the Guarantors until the Senior Loan is paid in full.

3.    For such other and further relief as the Court deems just and proper, including but not limited to Defendant's costs and attorneys' fees.

## NOTICE OF AFFIRMATIVE AND OTHER DEFENSES

In further answer to Highland Park CDO I Grantor Trust, Series A's ("Highland") Complaint and by way of affirmative and other defenses, Wells Fargo gives notice that it asserts the following defenses as a matter of law and/or supported by facts to be determined through discovery.  Wells Fargo does not hereby assume any burden of proof that would otherwise rest on Plaintiff.

1.  Highland's claims are barred because it has failed to state a claim upon which relief can be granted.

2.  Highland's claims may be barred by the Statute of Repose.

3.  Highland's claims may be barred by laches.

4.  Highland's claims may be barred by the doctrines of waiver and/or waiver of liens.

5.  Highland's claims may be barred by its unclean hands or other inequitable conduct.

6.  Highland's claims may be barred by the doctrine of estoppel.

7.  Highland's claims may be barred in whole or in part by payment or partial payment.

8.  Highland's claims are subordinate to and are barred by the priority of Wells Fargo's mortgage and/or interest in the properties at issue.

9.  Highland's claims are barred because it has failed to join all necessary parties.

10. Highland's claims may be estopped from bringing or maintaining this action by reasons of its own actions, omissions, statements and/or conduct.

11. Highland's claims may be barred in whole or in part because equity favors Wells Fargo.

12. Highland's claims may be barred by the applicable statutes of limitation.

13. Highland's claims may be barred, in whole or in part, due to accord and satisfaction.

14. Highland's claims may be barred by release.

15.    Highland's claims are barred, in whole or in part, by its failure to mitigate its damages, if any, the entitlement to which is denied.

16.    Wells Fargo reserves all of its rights under all mortgages and related documents, including, but not limited to, the right to charge any fees and/or costs in protecting its interest.

17.    Wells Fargo further reserves the right to add or delete defenses, to amend its answer and other defenses and/or add counter-claims or cross-claims or third party claims as may become necessary after a reasonable opportunity for discovery.

**WHEREFORE**, Defendant prays as follows:

1.    For a declaration that Plaintiff is barred by the Intercreditor Agreement from enforcing the Mezzanine Guaranty through, among other things, the Guaranty Enforcement Action.

2.    For a declaration that Defendant is entitled to any and all proceeds from the Guarantors until the Senior Loan is paid in full.

3.    For such other and further relief as the Court deems just and proper, including but not limited to Defendant's costs and attorneys' fees.

## COUNTERCLAIM

Defendant, Wells Fargo Bank, N.A., as Trustee for the Morgan Stanley Capital I Inc. Commercial Mortgage Pass-Through Certificates Series 2006-XLF (hereinafter "Wells Fargo"), by and through its attorneys, Miller, Canfield, Paddock and Stone, P.L.C, counterclaims against Plaintiff Highland Park CDO I Grantor Trust, Series A ("Highland") as follows:

## PARTIES

1.    Upon information and belief, Highland, a successor-in-interest to Morgan Stanley, is a Cayman Islands trust, having an address at The Bank of New York Trust Company, National Association, 601 Travis Street, 16th Floor, Houston, Texas.

2.      Wells Fargo is a national banking association acting as trustee for the Morgan Stanley Capital I Inc. Commercial Mortgage Pass-Through Certificates Series 2006-XLF, and having a place of business at c/o Midland Loan Services, Inc., 10851 Mastin, Suite 300, Overland Park, Kansas.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, 2201, 2202, because this is a civil action between a citizen of a state and foreign state, the amount in controversy exceeds $75,000, exclusive of interest and costs, and this action is based upon an actual controversy between Highland and Wells Fargo regarding the interpretation of certain agreements.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391. Upon information and belief, a substantial part of the events giving rise to the claim occurred in this District.  By filing its Declaratory Judgment Complaint against Wells Fargo, Highland submitted to personal jurisdiction in the State of New York.  Furthermore, the Intercreditor Agreement at issue is governed by the laws of New York and states that all matters of performance are interpreted to be wholly performed within the State of New York.

## CONTRACT DISPUTE

5.      On or about August 3, 2006, the parties entered into an agreement entitled Intercreditor Agreement by and between Morgan Stanley Mortgage Capital Inc., a New York corporation as Senior Lender and Morgan Stanley Mortgage Capital Inc., a New York corporation as Mezzanine Lender (hereinafter "Intercreditor Agreement"), a copy of which is attached hereto as Exh. A.

6.      On or about August 16, 2006, Morgan Stanley Mortgage Capital Inc., a New York corporation as Senior Lender assigned its interest to Wells Fargo.    Morgan Stanley Mortgage Capital Inc., a New York corporation as Mezzanine Lender assigned its interest to Highland.

7.      Section 8(a) of the Intercreditor Agreement governing "Subordination of Mezzanine Loan and Mezzanine Loan Documents" provides that:

> Mezzanine Lender hereby subordinates and makes junior the Mezzanine Loan, the Mezzanine Loan Documents and the liens and securities created thereby, and all rights, remedies, terms and covenants contained therein to (i) the Senior Loan, (ii) the liens and security interests created by the Senior Loan Documents and (iii) all of the terms, covenants, conditions, rights and remedies contained in the Senior Loan Documents, and no amendments or modifications to the Senior Loan Documents or waivers of any provisions thereof shall affect the subordination thereof as set forth in this Section 8(a).  Mezzanine Lender hereby acknowledges and agrees that the Mezzanine Loan is not secured by a lien on the Premises or any of the other collateral securing the Senior Loan or any other assets of the Borrower.  (Exh. A at 17.)

8.      Section 9(a) of the Intercreditor Agreement, governing "Payment Subordination" provides that:

> Except (i) as otherwise provided in this Agreement and (ii) in connection of the exercise by Mezzanine Lender of its rights and remedies with respect to the Separate Collateral in accordance with the terms of this Agreement, all of Mezzanine Lender's rights to payment of the Mezzanine Loan and the obligations evidenced by the Mezzanine Loan Documents are hereby subordinated to all of Senior Lender's rights to payment by Borrower of the Senior Loan and the obligations secured by the Senior Loan Documents, and Mezzanine Lender shall not accept or receive payments (including, without limitation, whether in cash or other property and whether received directly, indirectly or by set-off, counterclaim or otherwise) from Borrower and/or from the Premises prior  to the date that all obligations of Borrower to Senior Lender under the Senior Loan Documents are paid.  (Exh. A at 17.)

9.      Section 9(a) of the Intercreditor Agreement specifically states that:

> If a Proceeding shall have occurred or a Continuing Senior Loan Event of Default shall have occurred and be continuing, Senior Lender shall be entitled to receive

payment and performance in full of all amounts due or to become due to Senior Lender before Mezzanine Lender is entitled to receive any payment on account of the Mezzanine Loan.

10.     The Continuing Senior Loan Event of Default, in the alternative to bankruptcy proceedings, triggers the Senior Lender's contractual entitlement "to receive payment and performance in full of all amounts due or to become due to Senior Lender before Mezzanine Lender [i.e. Highland] is entitled to receive any payment on account of the Mezzanine Loan." (Exh. A.)

11.     Since the parties set down their agreement in a clear, complete document, their writing should be enforced according to its terms.  Evidence outside the four corners of the document as what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing.

12.     Enforcing contracts according to their terms is all the more compelling in the context of real property transactions, where commercial certainty is a paramount concern.

13.     Highland has the obligation under the Intercreditor Agreement to hold monies Highland receives for the benefit and in favor of Wells Fargo:

> All payments or distributions upon or with respect to the Mezzanine Loan which are received by Mezzanine Lender contrary to the provisions of this Agreement shall be received  and held in trust by the Mezzanine Lender for the benefit of Senior Lender and shall be paid over to Senior Lender in the same form received (with any necessary endorsement) to be applied (in the case of cash) to, or held as collateral (in the case of non-cash property or securities) for, the payment or performance of the Senior Loan in accordance with the terms of the Senior Loan Documents.  (Exh. A at 18.)

14.     Section 33 of the Intercreditor Agreement provides,

> <u>Injunction</u>.  Senior Lender and Mezzanine Lender each acknowledge (and waive any defense based on a claim) that monetary damages are not an adequate remedy to redress a breach by the other hereunder and that a breach by either Senior Lender or Mezzanine Lender hereunder would cause irreparable harm to the other.  Accordingly, Senior Lender and Mezzanine Lender agree that upon a

breach of this Agreement by the other, the remedies of injunction, declaratory judgment and specific performance shall be available to such non-breaching party. (Exh. A at 33.)

15.     Highland has breached the Intercreditor Agreement by initiating an action against the Guarantors (the "Guaranty Enforcement Action") (Case No. 08-CV 01670).

16.     Pursuant to Section 33, Wells Fargo, as the non-breaching party to the Intercreditor Agreement, is entitled to certain agreed upon remedies including declaratory and injunctive relief.

## COUNT I - DECLARATORY JUDGMENT

17.     Wells Fargo incorporates by reference all of the allegations contained in paragraphs 1 through 14, inclusive, of the Counterclaim.

18.     Wells Fargo has satisfied any and all of its conditions, covenants and obligations incumbent on it pursuant to the Intercreditor Agreement.

19.     Highland initiated the Guaranty Enforcement Action in violation of the Intercreditor Agreement.

20.     An actual controversy, as contemplated by 28 U.S.C. § 2201, has arisen and now exists between Counterclaimant on the one hand and Counter-Defendant on the other concerning the Guaranty Enforcement Action.

21.     Pursuant to Section 33 of the Intercreditor Agreement, Wells Fargo desires a judicial determination that Highland has no right to bring the Guaranty Enforcement Action under the Mezzanine Guaranty and Intercreditor Agreement.

22.     Wells Fargo further requests a judicial declaration that Wells Fargo has the right to receive and retain any and all proceeds from the Guaranty Enforcement Action.

23.    A judicial declaration is necessary and appropriate at this time under the circumstances.

**WHEREFORE**, Defendant/Counterclaimant prays as follows:

1.    For a declaration that Plaintiff/Counter-Defendant is barred by the Intercreditor Agreement from enforcing the Mezzanine Guaranty through, among other things, the Guaranty Enforcement Action.

2.    For a declaration that Defendant/Counter-Claimant is entitled to any and all proceeds from the Guarantors until the Senior Loan is paid in full.

3.    For such other and further relief as the Court deems just and proper, including but not limited to Defendant/Counter-Claimant's costs and attorneys' fees which are provided for by Section 32(a)(i)-(ii) of the Intercreditor Agreement.

## COUNT II – INJUNCTIVE RELIEF

24.    Wells Fargo incorporates by reference all of the allegations contained in paragraphs 1 through 22, inclusive, of the Counterclaim.

25.    Wells Fargo has satisfied any and all of its conditions, covenants and obligations incumbent on it pursuant to the Intercreditor Agreement.

26.    Highland initiated the Guaranty Enforcement Action in violation of the Intercreditor Agreement.

27.    Pursuant to Section 33 of the Intercreditor Agreement, Wells Fargo is entitled to an injunction against Highland, enjoining Highland from enforcing the Mezzanine Guaranty through, among other things, the Guaranty Enforcement Action until the Senior Loan is paid in full.

**WHEREFORE**, Defendant/Counterclaimant prays as follows:

1.    For an injunction barring Highland from enforcing the Mezzanine Guaranty through, among other things, the Guaranty Enforcement Action until the Senior Loan is paid in full.

2.       For such other and further relief as the Court deems just and proper, including but not limited to Defendant/Counter-Claimant's costs and attorneys' fees which are provided for by Section 32(a)(i)-(ii) of the Intercreditor Agreement.

Dated: July 31, 2008

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By:  s/Gregory L. Curtner
        Gregory L. Curtner (GC 5395)
        Counsel for Defendant /Counter-Claimant
        Miller, Canfield, Paddock and Stone, P.L.L.C.
        500 Fifth Avenue, Suite 1815
        New York, New York 10110
        Telephone: (212) 704-4400
        Email: curtner@millercanfield.com

DELIB:2992045.4\131318-00022